BLANK ROME LLP
Attorneys for Plaintiff,
OLDENDORFF CARRIERS GMBH & CO. KG
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLDENDORFF CARRIERS GMBH & CO. KG<br><br>     Plaintiff,<br><br>  -against-<br><br>SIDOR, C.A.<br><br>     Defendant. | 08 Civ.<br><br>**VERIFIED COMPLAINT** |

  Plaintiff, OLDENDORFF CARRIERS GMBH & CO. KG ("Plaintiff"), by its attorneys Blank Rome LLP, complaining of the above-named Defendant, SIDOR, C.A. ("Defendant"), alleges upon information and belief as follows:

  1.  This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

  2.  At all material times, Plaintiff was and now is a limited partnership organized and existing under the laws of Germany with a place of business at Willy-Brandt-Allee 6, Lübeck, Germany.

3. At all material times, Defendant was and is a foreign corporation or other business entity organized under the laws of Venezuela with a place of business at Av. La Estancia, Edif. General, Piso 7 y 9, Chuao, Caracas, Venezuela.

4. By a Contract of Affreightment dated June 6, 2007 ("the COA"), Plaintiff agreed to transport three shipments of dolomite ("Cargoes") on vessels to be nominated by Plaintiff, and Defendant agreed to provide the Cargoes of dolomite for such vessels during June and July 2007, as provided in the COA.

5. Pursuant to the COA, the Cargoes were to be loaded in Lower Cove, Newfoundland, and discharged at Matanzas, Venezuela.

6. Pursuant to a time charter dated March 29, 2007 ("Time Charter"), Plaintiff chartered the M/V NEW NAVIGATION ("Vessel") from its owner, non-party STX Pan Ocean Shipping Co. Ltd. ("Owner"), for the minimum of four maximum of six months.

7. Plaintiff nominated the Vessel to transport the third of the three Cargoes pursuant to the COA.

8. Pursuant to the COA, Defendant provided the third Cargo to be loaded aboard the Vessel.

9. The Vessel completed loading the Cargo at Lower Cove, Newfoundland, on July 11, 2007, and sailed for Matanzas, Venezuela, to discharge the Cargo.

10. On July 20, 2007, just before 3 a.m., while proceeding to Matanzas and navigating in the Orinoco River in Venezuela with Defendant's Cargo on board, the Vessel grounded at about Mile 183.6 of the River, outside the channel for vessels transiting the Orinoco River ("the Grounding").

11.  The Grounding caused physical damage to the Vessel. More specifically, fuel tank numbers 1 and 2 of the Vessel were breached and fuel oil was released into the Orinoco River as a result.

12.  The Grounding also caused damage to ballast tanks 1, 2, 3, 4 and 5 of the Vessel.

13.  In addition to the release of fuel oil into the River, fuel oil entered Hold No. 4, where it contaminated some of the Cargo.

14.  Following the grounding and the subsequent release of the fuel oil into the Orinoco River, Owner contends the Venezuelan authorities imposed a fine on Owner of 58,609,088 Bolivars.

15.  Temporary repairs were made to the vessel at Puerto Ordaz and Matanzas. Slop discharge and related operations were then carried out at Puerto Ordaz, Trinidad, and Guiria, Venezuela. Following its call at Guiria, the Vessel proceeded to Freeport, Bahamas, for emergency dry dock repairs required by the Vessel's Classification Society. Full repairs were carried out in drydock.

16.  During the above delays and periods of repair, the Vessel was not able to be employed by Plaintiff under the Time Charter.

17.  Owner contends that a navigational buoy (Buoy 183.6) had drifted out of position and the course taken by the pilot of the Vessel, in reliance on the buoy, took the Vessel outside the navigational channel to a rocky area where the depth of the River was less than the draft of the Vessel.

18.  Owner contends that as a result of Buoy 183.6 being out of position, Plaintiff breached its obligation under the Time Charter to provide a safe port and a safe berth for the Vessel to discharge and that the Grounding was a result of the breach of this obligation.

19. In the alternative, Owner contends that since the Time Charter obliged Owner to follow Plaintiff's orders and directions as to employment of the Vessel, Owner is entitled to an implied indemnity from Plaintiff for any loss or damage suffered in carrying out Plaintiff's orders.

20. Owner further contends that the time lost by the Vessel caused by the Grounding is time for which Plaintiff must compensate Owner at the appropriate rate of hire.

21. As a result of Plaintiff's alleged breaches of the Time Charter, Owner contends that it is entitled to recover from Plaintiff, and that Plaintiff is obliged to pay Owner, the following sums, all as a result of the Grounding:

| | | | |
|---|---|---|---:|
| A. | | Temporary Repair | $260,978 |
| | | - Underwater repair at Ordaz | 137,500 |
| | | - Korean Diver | 104,478 |
| | | - Material for Watertight | 19,000 |
| B. | | Permanent Repair (Dry Dock) | 3,440,027 |
| C. | | Slop Disposal & Tank Cleaning | 1,050,806 |
| | | - Ordaz | 68,210 |
| | | - Trinidad | 163,325 |
| | | - Guiria | 798,051 |
| | | - New Orleans | 21,200 |
| D. | | Others | 449,501 |
| | | - Agency (Ordaz & Matanzas) | 144,225 |
| | | - Oil Pollution | 92,733 |
| | | - Equipment for Slop Disposal | 42,659 |

|  |  |
|---|---|
| - Superintedancy/Class Survey Etc. | 169,884 |
| SUB TOTAL | $5,201,312 |
| TIME LOSS/HIRE | $5,078,384 |
| GRAND TOTAL | $10,279,695 |

22. Owner also contends it is entitled to recover interest and its costs in pursuing its claims, including attorneys fees, and estimates interest to be $719,578 and recoverable costs to be $1,000,000, for a total of $11,999,273 ("Owner's Claims").

23. To obtain security for Owner's Claims, Owner threatened to arrest vessels owned and/or operated by Plaintiff and/or such other property of Plaintiff as Owner might find and seize.

24. In order to avoid the seizure of its vessels and property and the disruption to its business that such proceedings and threats of such proceedings would have, Plaintiff has agreed to and will shortly post security to Owner for Owner's Claims in the amount of $11,999,273, inclusive of interest and costs ("the London Security"), to be held pending the outcome of the disputes between Owner and Plaintiff arising out of the Grounding.

25. The Time Charter provides for arbitration in London, with English law to apply, of disputes between Owner and Plaintiff.

26. Costs, including attorneys fees, and interest are awarded to the prevailing party under English law and arbitration practice and procedure.

27. Owner is expected to commence arbitration in the near future in London against Plaintiff to recover Owner's Claims caused by the Grounding. ("the London Arbitration").

28. With respect to the discharge port, Defendant warranted in the COA that it would provide "one safe berth Matanzas, Venezuela, where [Defendant is] to guarantee 30' fresh water, including the Orinoco River" ("Safe Berth Obligation").

29. Defendant has a major facility at Matanzas and has access to evidence which Plaintiff does not have about conditions in the Orinoco River.

30. On or about February 11, 2008, Plaintiff advised Defendant of Owner's Claims and tendered the defense of Owner's Claims in the London Arbitration to Defendant and demanded payment of Plaintiff's claim for demurrage in the amount of $270,813.89 ("the Demurrage Claim") (described further below).

31. On February 15, 2008, Defendant declined liability for Owner's Claims, refused to assume Plaintiff's defense in the London Arbitration, and declined to pay the Demurrage Claim.

32. Without prejudice to its defenses and positions in the London Arbitration, Plaintiff hereby adopts and alleges against Defendant the facts and contentions alleged by Owner against Plaintiff in Paragraphs 10-22 above.

33. As a result of Defendant's breach of the Safe Berth Obligation in the COA and refusal to assume Plaintiff's defense of the London Arbitration, Plaintiff is entitled to recover from Defendant any amounts it has to pay Owner as well as its own costs of defending itself against Owner's Claims.

34. If the arbitrators issue an award in the London Arbitration, Owner will enforce such award against the London Security.

35. Pursuant to the COA, Defendant is obliged to pay Plaintiff demurrage for the amount of time the Vessel spent at the load and discharge ports in excess of the time allowed to load and discharge the cargo.

36. The Vessel spent time at the load and discharge ports in excess of the time allowed in the COA, namely, 6 days, 3 hours, and 43 minutes, which at the agreed rate of $44,000 per day equals the Demurrage Claim of $270,813.89, none of which has been paid although duly demanded.

37. As a result of the delays and time spent undergoing repairs, the Vessel was "off-hire" under the Time Charter for a period of 73 days.

38. As a result of the Grounding and Defendant's breach of the Safe Berth Obligation, Plaintiff had to replace bunkers which spilled into the River and cargo holds of the Vessel and also overpaid hire to Owner for the time the Vessel was out of service. The amount of this claim is $419,932.78 ("Bunker/Hire Claim"). This amount is less than the $488,396 formally demanded prior to this action from Defendant.

39. As a result of the Grounding and Defendant's breach of the Safe Berth Obligation, Plaintiff lost profits during this period in the amount of the difference between what it had to pay Owner under the Time Charter ($36,000 per day) and the amount it could have earned operating the Vessel under charters with Plaintiff's customers (which it estimates at present to be $85,000). Seventy-three days times this difference, $49,000, equals $3,577,000 ("Lost Profits Claim").

40. Plaintiff has demanded that Defendant provide security to Plaintiff for Owner's Claims, but Defendant has refused to do so.

41. Plaintiff has demanded that Defendant assume its defense in the London Arbitration, but Defendant has refused to do so.

42. Plaintiff has demanded that Defendant provide security for the Demurrage Claim, but Defendant has refused to do so.

43. Plaintiff has demanded that Defendant provide security for the Bunker/Hire Claim, but Defendant has refused to do so.

44. Plaintiff has demanded Defendant provide security for the Lost Profits Claim, but Defendant has refused to do so.

45. Clause 19 of the COA provides for arbitration of disputes in New York and, in particular, that the arbitration "proceedings shall be conducted in accordance with the Rules of the Society of Maritime Arbitrators, Inc."

46. Section 30 of the Rules of the Society of Maritime Arbitrators, Inc. ("SMA") provides: "The Panel, in its Award, shall grant any remedy or relief which it deems just and equitable, including, but not limited to specific performance." Section 30 and the powers afforded arbitrators in New York by law and under the SMA Rules authorize the arbitrators to direct a party to provide security pending a final award.

47. Section 30 of the SMA Rules also empowers the arbitrators to award a party the costs of the arbitration as well as a party's attorney's fees "in the prosecution or defense of the case."

48. Pursuant to 9 U.S.C. §8, Plaintiff has filed this action and will commence arbitration in New York in the next few days ("the New York Arbitration"). Plaintiff reserves its right to arbitrate the disputes with Defendant described in this Complaint and also its right to ask

the Court to compel Defendant to arbitrate these disputes in the event Defendant refuses or fails to do so.

49. The principal amount of Plaintiff's claims under the COA is presently $16,267,019.67.

50. Interest on the principal amount $16,267,019.67 at the New York statutory rate of 9% for two years is $2,928,064.

51. Plaintiff estimates that the arbitrator fees in New York will be $150,000.

52. Plaintiff estimates that its recoverable attorney's fees in New York will be $500,000.

53. The total amount of Plaintiff's claims in the New York Arbitration is therefore $19,845,083.67.

54. In the New York Arbitration, Plaintiff will ask:

    a. that the arbitrators award Plaintiff the amount of Owner's Claims, $11,999,273 and/or declare that Plaintiff is entitled to recover from Defendant any and all amounts which the arbitrators in the London Arbitration award to Owner, if any, as well as Plaintiff's costs of defending itself (including its attorneys fees) in the London Arbitration;

    b. that pending their final award the arbitrators issue a partial final award directing Defendant to provide security to Plaintiff in the amount Plaintiff provided to Owner in London, namely, $11,999,273;

    c. that the arbitrators award Plaintiff the amount of the Demurrage Claim, namely, $270,813.89, plus interest, and/or direct Defendant to provide security for same;

  d.  that the arbitrators award Plaintiff the amount of the Bunker/Hire Claim in the amount of $419,932.78 and/or direct Defendant to provide security for same;

  e.  that the arbitrators award Plaintiff the Lost Profits Claim, namely, $3,577,000, plus interest, and/or direct Defendant to provide security for same;

  f.  that the arbitrators award Plaintiff the fees of the arbitrators in the New York Arbitration as well as other recoverable costs and Plaintiff's attorney's fees: and

  g.  that the arbitrators award such other and different relief as the arbitrators deem appropriate.

55. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, assets within this district consisting of cash, funds, freight, hire, and credits in the hands of garnishees in this District, including but not limited to electronic fund transfers, because Defendant conducts business internationally in U.S. Dollars, and all electronic funds transfers are processed by intermediary banks in the United States, primarily in New York.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B. That since Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty and Maritime Claims, this Court issue an Order

directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of Defendants' tangible or intangible property or any other funds held by any garnishee, including electronic fund transfers to or from Defendant, in the district which are due and owing or otherwise the property of the Defendant up to the amount of **$19,845,083.67** to secure the Plaintiff's claims against Defendant, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That this Court enter judgment for Plaintiff's damages plus interest and costs, or retain jurisdiction over this matter through the entry of a judgment on an arbitration award.

D. That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, New York
June 13, 2008

Respectfully submitted,

BLANK ROME, LLP
Attorneys for Plaintiff

By_____
LeRoy Lambert (LL-3519)
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000

## VERIFICATION

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF NEW YORK       )

LeRoy Lambert, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for the Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of the Plaintiff.

_____
LeRoy Lambert

Sworn to before me this
13th day of June, 2008

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

BLANK ROME LLP
Attorneys for Plaintiff
LeRoy Lambert (LL 3519)
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLDENDORFF CARRIERS GMBH & CO. KG<br><br>    Plaintiff,<br><br> -against-<br><br>SIDOR, C.A.<br><br>    Defendant. | 08 Civ.<br><br>**AFFIDAVIT PURSUANT TO**<br>**SUPPLEMENTAL RULE B** |

STATE OF NEW YORK )
         ) ss:
COUNTY OF NEW YORK )

 LeRoy Lambert, being duly sworn, deposes and says:

 1. I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the Verified Complaint and submit this affidavit in support of Plaintiff's request for the issuance of Process of Maritime Attachment and Garnishment of the property of defendant, Sidor, CA ("Defendant"), a foreign corporation, pursuant to Supplemental Rule B For Certain Admiralty and Maritime Claims of the Federal Rules of the Federal Rules of Civil Procedure.

 2. Defendant is a party to the maritime contract of charter party on which this claim is based, and is a foreign corporation or other business entity organized and existing under the laws of Venezuela or another foreign jurisdiction.

3.   Under my supervision, my office conducted a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler, telephone assistance, and a general internet search.

4.   In our search, we did not find any listing or reference to Defendant in this judicial district or the state of New York. In the circumstances, I believe Defendant cannot be found within this district.

_____
LeRoy Lambert

Sworn to before me this
13th day of June, 2008

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20___